UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 11-80613 |
| PHILLIP CHARLES SHERMAN<br>TEDDIANNE MARIE SHERMAN | S.S. NO. xxx-xx-5205<br>S.S. NO. xxx-xx-8342 |
| DEBTORS | CHAPTER 13 |

## OBJECTION TO CONFIRMATION

Now comes Branch Banking and Trust Company ("BB&T"), by and through counsel, and objects, pursuant to 11 U.S.C. §506(a), to the Proposed Plan and Order Confirming Plan. In support of this Objection, BB&T shows unto the Court the following:

1. This matter is a core proceeding pursuant to 28 U.S.C. §157, and the Court has jurisdiction pursuant to 28 U.S.C. §§151, 157, and 1334. The Court has the authority to hear this matter pursuant to Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.

2. The Debtors filed a bankruptcy petition on April 13, 2011, and Richard M. Stearns was appointed as the trustee in the case.

3. BB&T is the holder of a debt instrument ("Note") executed by the Debtors on or about October 7, 2009 in the original principal amount of $67,364.62. The Note is secured by a Deed of Trust that encumbers real property located at 6 Finchley Court, Durham in Durham County, North Carolina ("Collateral"). BB&T properly perfected its lien on the Collateral by recording the Deed of Trust in Book 6355, Page 760 of the Durham County Registry. The Collateral is property of the estate pursuant to 11 U.S.C. §541. Copies of the loan documents are attached as "Exhibit A" and incorporated herein by reference.

4. On or about April 26, 2011 BB&T filed a proof of claim for the secured amount of $66,289.05 due under the Note. The Debtors' Chapter 13 Plan proposes that the Collateral will be released and gives BB&T 180 days following the entry of the order confirmating the Debtor's Chapter 13 Plan to file a deficiency claim.

5. BB&T objects to 180-day time period to file a deficiency claim after the release of the Collateral.

Wherefore, BB&T respectfully prays for the Court to grant the following relief:

1. To allow BB&T 240 days to file a deficiency claim after the entry of the order confirming the Debtor's Chapter 13 Plan; and

3. To grant such other and further relief as the Court deems just an appropriate.

Dated: July 22, 2011

                POYNER SPRUILL LLP

        By:  <u>s/ James S. Livermon, III</u>
              NC State Bar Number 26492
              Attorneys for Branch Banking and Trust Company
              Post Office Box 353
              Rocky Mount, North Carolina 27802-0353
              Telephone: (252) 446-2341
              Fax: (252) 972-7051

# BB&T RETAIL NOTE AND SECURITY AGREEMENT

CUSTOMER NUMBER _____
NOTE NUMBER _____
DATE October 7, 2009

**CREDITOR:** BRANCH BANKING AND TRUST COMPANY, 200 WEST SECOND STREET, WINSTON-SALEM, NORTH CAROLINA 27101

**DEBTOR(S):** TEDDIANNE SHERMAN and PHILLIP C SHERMAN
                                   NAME

(In this Retail Note and Security Agreement (also called Contract) the words, I, me, my, mine and us mean each and all of those signing the Contract. The words you, your, and yours mean Branch Banking and Trust Company.) In return for a loan that I have received from you, I promise to pay to your Order at the office in the above city the amount of:

**SIXTY-SEVEN THOUSAND THREE HUNDRED SIXTY-FOUR DOLLARS & 62/100**

U.S. $ 67,364.62 (the "principal"), plus interest on the unpaid principal from the date of this Contract at the yearly (choose one only):

[X] FIXED RATE OF 7.000 %; OR
[ ] VARIABLE RATE OF ___ %, TO BE ADJUSTED _____ BASED UPON _____
    (THE INITIAL RATE)                                          (INDEX + MARGIN)

but shall in no event exceed the maximum rate allowed under applicable law, nor be less than a minimum rate of ___ % together with insurance charges and **LATE CHARGES** if any, according to the **Payment Schedule** and other Contract terms as set forth below in the Special Regulation Z Truth in Lending Disclosure Box (herein **Special Regulation Z Disclosures**) and according to other Note terms as provided below:

**Interest:** Interest will be charged on that part of the principal which has not been paid and unless I have the right to rescind, will be charged beginning on the date of this Note and continuing until the full amount has been paid.

[ ] If checked here, I have the right to rescind this loan. If I choose not to do so, I understand my interest charges will begin to accrue on _____

**Security for Payment and Performance.** To protect you if I default in the payment or performance of any obligation arising under the terms of the Contract, I grant you a security interest in certain property and in all additions, accessions, parts, and equipment attached to property and in all substitutions, along with any proceeds of the property (hereinafter collectively referred to as "Collateral") as described below:

[X] If checked here, I have given you a security interest in certain personal property as described in a separate Assignment or Security Agreement ("Security Agreement") and/or I have executed a mortgage or deed of trust ("Mortgage") in favor of you which when recorded will be a lien on real property described in that document.

[ ] If checked here, I have given you a security interest in certain personal property as described below.

                                                                                              MOBILE HOME
**Collateral Description**
YEAR    MAKE          TYPE BODY      MODEL         SERIAL NUMBER(S)              SIZE    BEDROOMS

OTHER _____
Except as to any collateral Borrower(s) now use or are purchasing to use as Borrower(s)' principal dwelling (such as a mobile home), this security interest shall also secure any other outstanding or future debts of Borrower(s) to Bank. The collateral will normally be kept at this address: _____

If the property is affixed or is to be affixed to real estate, the real estate is described as follows: _____
and the record owner is: _____

## SPECIAL REGULATION Z DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost me | Amount Financed<br>The amount of credit provided to me or on my behalf | Optional Payment Protection | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled |
|---|---|---|---|---|
| 7.000 % | E $ 41,583.02 | $ 67,364.62 | E $ | E $ 108,947.64 |

**MY PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 180 | $605.27 | Monthly, Beginning November 5, 2009 |

**SECURITY:** I am giving a security interest in:
[ ] The goods or property being purchased.
[X] Other Residential Lot
Collateral securing other loans may also secure this loan.

**FILING FEES AND TAXES** $ _____
**PREPAYMENT:** If I pay off early, I may have to pay a penalty. I understand that I will not be entitled to a rebate of my prepaid Finance Charges.
**REQUIRED DEPOSIT:** If your loan is secured by a deposit earning less than 5%, the annual percentage rate does not take into account your required deposit.

**LATE CHARGE:** If a payment or any part of a payment is past due 15 or more days after the due date, I will be charged 4% of the amount of the payment past due. When an installment payment is past due 15 or more days, subsequent payments will first be applied to the past due balance.

**VARIABLE RATE:** [ ] If checked here, my loan contains a variable rate feature and is secured by my principal dwelling. Disclosures about the variable rate feature have been provided to me earlier. The maximum Annual Percentage Rate that may be imposed is 18%, or 16% if your loan amount is $25,000 or less.

[ ] If checked here, my loan contains a variable rate feature, but is not secured by my principal dwelling or is secured by my principal dwelling but has a maturity of one year or less. The **ANNUAL PERCENTAGE RATE** may increase or decrease on my loan as the _____ increases or decreases.

My rate will not change more often than _____ and it will not increase above _____ %; nor decrease below _____ %. Any increase in rate will result in [ ] higher payments, or [ ] additional payments, or [ ] higher final payment.
(See HYPOTHETICAL VARIABLE RATE EXAMPLES below.)

**ASSUMPTION NOTICE.** If this loan finances the purchase of property to be used as my principal dwelling, someone buying my dwelling cannot assume the remainder of this loan under the original terms.

Information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties appears in my contract document.
**E means an estimate**          (If a box [ ] is not checked that term does not apply.)

### HYPOTHETICAL VARIABLE RATE EXAMPLES

**Higher Payments:** If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, my payments would increase to $178.63.

**Additional Payments:** If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, I would pay one additional payment of $174.04 and a final payment of $20.40.

**Higher Final Payment:** If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, my final payment would increase to $365.43.

THIS AGREEMENT IS SUBJECT TO THE ADDITIONAL TERMS AND CONDITIONS FOUND ON PAGES 2, 3, AND 4 WHICH ARE INCORPORATED HEREIN BY REFERENCE

PDF created with pdfFactory trial version www.pdffactory.com



| ITEMIZATION OF AMOUNT FINANCED | | OPTIONAL BB&T PAYMENT PROTECTION OPTIONS |
|---|---|---|
| The Amount Financed of $ 67,364.62 is distributed as follows: | | The purchase of BB&T Payment Protection is not required for obtaining credit and will not be provided unless I (we) sign below, boxes are checked to show the protection I (we) want, and I (we) sign the separate agreement for this protection. I (We) understand that I (we) may cancel the protection at any time. The protection is for the stated term of the Retail Note. |
| Amount given to me directly | $ 67,364.62 | |
| Amount paid on my account | $ | **Protected Events** |
| | $ | ☐ Yes, I want single Loss of Life and Terminal Illness protection at a cost of: $ |
| Amount paid to others on my behalf | | |
| (a) Insurance Companies | $ | |
| (b) Public Officials (Filing, Recording Fees and Taxes) | $ | ☐ Yes, we want joint Loss of Life and Terminal Illness protection at a cost of: $ |
| (c) Appraisal Fee | $ | |
| (d) Attorney's Fees to | $ | ☐ Yes, I (primary protected borrower) want Disability protection at a cost of: $ |
| (e) Title Insurance Premium to | $ | |
| (f) Other | $ | Protected Debtor |
| Other | $ | Protected Debtor |
| (g) Origination Fee Flood Fee | $ | |
| Less: Prepaid Finance Charges (loan fee, flood fee, etc.) $ | | ☐ Yes, I want Job Loss protection at a cost of: $ |

Insurance Products are

- Not a deposit or other obligations of, or guaranteed by BB&T or its affiliates.
- Not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States or by BB&T or its affiliates.
- If applicable, there is investment risk associated with the insurance product, including the possible loss of value.

Protected Debtor or Co-Debtor

[X] No, I(we) do not want any Payment Protection or I(we) understand that I(we) am(are) not eligible for Payment Protection.

Debtor's Initials

| DRAFT AUTHORIZATION | PROPERTY INSURANCE - I may obtain Property Insurance from anyone I desire that is reasonably acceptable to you. If I obtain property insurance from BB&T, I will pay the premium shown below. No insurance is provided unless the premium is shown. |
|---|---|
| Please debit my acct # _____ for my loan payment each time it is due | I want property insurance from BB&T at a cost of $ _____ for a term of _____ months. |
| Authorized Signature | |

**THIS CONTRACT IS SIGNED AND ACCEPTED SUBJECT TO THE ADDITIONAL TERMS AND PROVISIONS CONTAINED ON PAGES 3 AND 4 WHICH ARE MADE PART OF THIS CONTRACT BY REFERENCE**

EXECUTION/ACKNOWLEDGEMENT OF RECEIPT OF DISCLOSURES

The Undersigned acknowledge(s) receipt of a completed copy of this Note and Disclosure contained herein which Disclosures were made prior to signing. Witness our hand(s) and Seal(s), which are adopted by us.

WITNESS _Beth Myer_ Debtor _/s/ Teddianne Sherman_ (SEAL)
TEDDIANNE SHERMAN

WITNESS _Beth Myer_ Debtor _/s/ Phillip C Sherman_ (SEAL)
PHILLIP C SHERMAN

WITNESS _____ Debtor _____ (SEAL)

WITNESS _____ Debtor _____ (SEAL)

PDF created with pdfFactory trial version www.pdffactory.com

## I ALSO AGREE TO THESE ADDITIONAL TERMS:

**Payments.** I have promised to repay this Contract under the payment schedule as set forth on page 1 in the Special Regulation Z Disclosure box. I understand that you will normally apply all full and timely scheduled installments under this Contract first to accrued interest, then to payment protection fees, if any, then to the unpaid principal balance. I may repay this Contract at any time, either in full or in part, provided I also pay the payment protection fees, if any, and accrued interest due through the date of my early payment, and repay closing costs as required by this Contract. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "Payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

**Estimated Credit Terms.** I understand that the disclosed charges for Payment Protection coverage are applied on a daily basis. In addition, the interest accrues on the outstanding principal balance on a daily basis. Consequently, the amount you have disclosed for the Finance Charge, Payment Protection charges and the Total of Payments are estimates and the actual amounts paid may increase or decrease based upon my payment habits.

**Prime Rate.** If the words "Prime Rate," "Bank Prime Rate," "BB&T Prime Rate," "Bank's Prime Rate," or "BB&T's Prime Rate" are used in this Agreement, they shall refer to the rate announced by the Bank from time to time as the Prime Rate. I understand the Bank makes loans both above and below the Prime Rate and uses indexes other than the Prime Rate. Prime Rate is the name given a rate index used by the Bank and does not in itself constitute a representation of any preferred rate or treatment.

**Security.** Unless otherwise provided herein, it is expressly understood and agreed that any and all Collateral (including but not limited to, real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper and equipment) given as security to insure my faithful performance and that of any third party or all obligations to you, however created, whether now existing or hereafter arising, shall remain as security for the Retail Note(s). It is understood and agreed that if you release any property herein, you will not be required or obligated to take any further steps to release said property from any lien or security interest unless you determine, in your sole discretion, that you may do so without consequence to your secured position and relative priority in other property; and unless I bear the reasonable cost of such action.

**Severability.** Whenever possible, the provisions of this Contract shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Contract shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Contract.

**Ownership and Disposition.** I am the owner of the collateral, and if there is a title to the Collateral, I will promptly deliver it upon request. I will not sell, lease, make a gift of, create a lien upon or otherwise dispose of the Collateral without your prior written consent.

**Location and Inspection.** You have the right to inspect the Collateral at any reasonable place and time. I will cooperate fully to make the Collateral available for your inspection within three days of your request. I will keep the property at the address shown on the reverse side and within the State of North Carolina. I shall not use the Collateral outside the United States without your prior written consent. If I move the Collateral to another location, I shall promptly notify you.

**Additions and Substitutions of Property.** All equipment, accessories and parts added by me will become part of the Collateral by accession. With your prior written consent, I may substitute other property for the Collateral in which event, all rights, duties, obligations, remedies and security interests shall cover fully any such substituted property.

**Financing Statement.** I will sign any financing statements, continuation statements and security interests filing statements regarding the Collateral and will pay all expenses of preparing and recording such statements when requested by you. I also grant you my Power of Attorney, which shall be effective so long as any amount is unpaid on the obligations secured by this contract and which gives you the right to sign my name on any financing statement you wish to file. I further specifically authorize you to file financing statements without my signature in any locations you believe necessary.

**Other Security Interests.** There are no other security interests or any other liens on the Collateral other than yours and those which I have disclosed to you in writing. I will not place, or allow to be placed any other security interest or lien on the Collateral while this Contract is still in force without your prior written consent. Should a lien of any kind be placed on the Collateral, I will promptly see that it is paid, satisfied, cancelled and removed.

**Maintenance.** I will keep the Collateral in good condition and good repair and I will not allow anything to be done to or with the Collateral that would lessen its value, except for normal use.

**Insurance.** I will keep the collateral insured at all times with the type of insurance and in such manner as you require. I shall pay all premiums for such insurance when they are supposed to be paid so the insurance will not lapse. If the collateral is damaged or destroyed, I understand that it is my loss and not yours. If I do not keep the required insurance in force or do not pay the premiums when due, you can force place collateral protection insurance which does not provide liability coverage, but which insures your interest in the collateral with a policy written for the remaining term of my loan and backdated to the date of any lapse in coverage. I authorize you to obtain coverage as contained in your program of insurance and collateral protection policy as in effect from time to time the terms of which are incorporated herein by reference which may include coverage in the U.S., Mexico, and Canada, a maximum of $50,000.00 coverage limited to the least of the cost to repair or replace any vehicle with another of like kind and quality, actual cash value or the net payoff on my loan. I authorize you to obtain this coverage and acknowledge you will earn a commission for placing this insurance. You may add the cost of this coverage to the outstanding balance of the Contract and it shall bear interest at the lesser of the Contract Rate or sixteen percent (16%) per annum until paid. You may also increase the amount of my monthly payment such that the loan will be paid at maturity (may include irregular final payment). In the alternative, a balloon payment will be due at maturity. However, I understand that you do not have to cover the collateral with insurance. If you do not insure the collateral, none of your rights or remedies against me will be prejudiced. I agree that only the primary debtor will receive notices regarding insurance matters and corresponding modifications to my payment schedule, if any. Any amount you pay for me will be secured by this security interest I have granted to you. All insurance proceeds under any insurance policy shall be payable to you for the amount of any money I owe to you. I will deliver to you the insurance policy or policies or a certificate of insurance, which may be applicable for insurance which I obtain. I give and assign to you any unearned insurance premiums which may be returned on cancellation of any insurance policy and agree that refund of any collateral protection insurance placed by you will be calculated and paid under the "Rule of 78's". I appoint you my attorney-in-fact to settle any insurance claim and to endorse any draft or check which may be payable to me so as to collect any unearned insurance premiums or insurance proceeds. I understand that all insurance proceeds and returned insurance premiums received by you will be applied against the money I owe you and any balance remaining will be paid to me. You owe me no fiduciary duty as to claims or placing insurance.

**Returned Payment Fee.** I understand that you may charge and collect a processing fee of $25.00 for a check on which payment has been refused by the payor bank because of insufficient funds or because I did not have an account at that bank.

**Release Fee.** I may be assessed a lien release fee, at the time my loan is paid off, of an estimated amount of $31.00 which will be based on the amount currently charged by the county or state for releasing your lien.

**Repayment of Closing Costs.** If the Bank pays any or all of the closing costs to establish my account, and I elect to terminate my account within thirty-six months of the origination date, I will be asked to repay some or all of the closing costs, not to exceed 1% of the amount prepaid, paid to outside providers on my behalf in the following instances: (1) If my loan is secured by a first deed of trust on real estate upon which there is located or there is to be located a structure or structures designed principally for occupancy of from one to four families ("home loan"), and my original loan amount is greater than $150,000. (2) If the loan is secured by real estate, but not a home loan or a construction loan. Closing costs may include, but are not limited to, title insurance premiums, attorney, appraisal, flood certification, and recording fees.

**Events of Default.** I will be in default under this Contract if any of the following events take place:

1. If I fail either to make a payment on time, or to perform all of my obligations under this Contract or under any other agreement I have made with you either now or in the future; or
2. If I or any other person or entity obligated under any other contract, note, agreement or document given in connection with this credit transaction, either now or in the future (herein "Obligor"), violates any term, provision or covenant contained therein; or
3. If I fail to furnish you information sufficient to verify my identity as required under the USA Patriot Act; or
4. If I or any Obligor make a false or materially misleading statement to you in connection with this or any other credit transaction; or
5. If I or any Obligor die, become insolvent or bankrupt; or
6. If the Collateral, if any, has been substantially damaged or lost or stolen; or
7. If I or any Obligor fail(s) to provide adequate and continuous insurance on any Collateral, as required by the Retail Note(s) or this Agreement or any other agreement with you; or
8. If I or any Obligor should use the Collateral, if any, in violation of any law, rule, regulation or government order; or
9. If a judgment or lien, including a tax lien should be filed or levied against me, or an attachment or garnishment should be issued against any of my property or rights; or
10. If you should consider any of my obligations to you under this or under any other agreement, contract, note or instrument unsafe or not completely secure, or if you should believe, in good faith, that my chances of payment or of other performance under this or under any other agreement, contract, note or instrument have been impaired.

**Repossession.** I agree that if I do not comply with the terms of this Contract or those of the Retail Note, then you may repossess the Collateral and take possession of it immediately without giving me notice before doing so and without filing an action with the court. You have my permission to enter any premises where the Collateral is located to recover the Collateral. If requested, I will promptly get the Collateral together and deliver it to you.

**Rights and Remedies.** If I am in default, you shall have all rights and remedies as provided under the North Carolina Uniform Commercial Code, including the right of repossession. All of your rights and remedies are cumulative and may be exercised by you concurrently. Failure or delay by you to exercise any of your rights and remedies at any time will not mean that you have given up or lost the right to exercise that right or remedy or any other right or remedy at a later time.

**Acceleration and Waiver of Notice.** If I am in default, you may require me to pay at once the total balance due under this Contract, along with other debts I might owe to you, without giving me prior notice of demand, dishonor, presentment, or protest.

**Right of Offset.** If I am in default, I authorize you to exercise immediately your common law right of offset against any monies or credits I might have with you.

**No Waiver of Rights.** You may accept late or partial payments as well as delay enforcing any of your rights on any occasion, without losing your rights under this Contract.

**Collection Fees.** If I default under this Contract, I agree to pay all your collection and legal expenses, including your reasonable attorneys' fees. I agree that 15% of the sum of the unpaid principal and all accrued interest owing at the time you file suit shall amount to your reasonable attorneys' fees.

PDF created with pdfFactory trial version www.pdffactory.com

Case 11-80613    Doc 26    Filed 07/22/11    Page 5 of 14

**Credit Investigation.** I consent to your obtaining a consumer credit report for the purpose of reviewing my account, taking collection action on the account or for other legitimate purposes associated with the account. I understand that I may write or call any BB&T branch office with questions or inquiries about my account and that I should furnish my complete account number when doing so. I understand that if I dispute the accuracy or completeness of any information supplied by BB&T in a consumer report furnished by a consumer reporting agency I may write: BB&T Loan Services, MC 100-50-02-57, P.O. Box 2306, Wilson, NC 27893.

**Responsibility of Persons Under This Contract.** If more than one person signs this Contract, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in the Contract. Any Guarantor, surety, or endorser of this Contract is also obligated to do these things. You may enforce your rights under this Contract against each of us individually or against all of us together.

**Actions Taken on My Behalf.** If I fail to do anything I am required to do under this Contract or any other agreement with you, such as to discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral, place and pay for any insurance thereon, order and pay for the repair, maintenance and preservation thereof or pay any necessary recording or filing fees, you may, in your sole discretion and without further obligation, take these acts on my behalf as you see fit. These amounts so spent will be added to the unpaid balance of what I owe you under this Contract and the rate of interest accruing on the unpaid principal balance of the Contract will be applied until I fully repay you. You may, but are not obligated to, increase the amounts of my payments under this Contract to cover the resulting total unpaid balance. I agree to make those new payment amounts if you so notify me. You also will be protected by your security interest(s) as to these amounts in that Collateral up to the amount secured. However, any Payment Protection will not cover these additional amounts or any resulting additional interest. I understand that any insurance purchased for me upon my failure to maintain such insurance, such as property insurance, will only protect your interest in the Collateral. You are under no obligation to purchase insurance to protect my interest, if any, in the Collateral, or to otherwise satisfy any legal requirement such as those for liability insurance covering personal injury and property damage to others.

**Governing Law.** This Contract shall be governed by the law of the State of North Carolina; provided however that any Mortgage or Deed of Trust encumbering the Borrower's property located in a state other than North Carolina shall be governed by and construed in accordance with laws of that state, and the Borrower hereby submits to the jurisdiction of the state in which the property is located in connection with any foreclosure or enforcement proceeding undertaken in connection with the Borrower's property. This is the entire agreement between you and me. No other agreements or understandings exist outside of this document.

**Arbitration.** Any unresolvable controversy or claim between us including but not limited to those arising out of or relating to this instrument, agreement, or document or any related instruments, agreements, or documents shall be determined by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of J.A.M.S./Endispute or any successor thereof ("J.A.M.S."), and the rules set forth herein. Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitration award shall include (1) a provision that the prevailing party in such arbitration shall recover its costs of the arbitration and reasonable attorneys' fees from the other party; and (2) the amount of such costs and fees.

Arbitration hearings will be held in Winston-Salem, North Carolina for North Carolina Contracts, Columbia, South Carolina for South Carolina Contracts and Richmond, Virginia for Virginia Contracts or such other city as you and I may mutually agree. The arbitration shall be administered by J.A.M.S., who will appoint one (1) arbitrator who shall be a retired judge or retired attorney experienced in bank lending contracts. All arbitration hearings will be commenced within 90 days of the other party's receipt of written demand for arbitration; further, the arbitrator only shall be permitted, upon a showing of cause, to extend the commencement of such hearing for up to an additional 60 days. Any controversy or claim subject to this arbitration provision not submitted to arbitration within one (1) year after such cause of action has accrued shall be deemed barred, notwithstanding any longer statute of limitations available at law. Notwithstanding the foregoing, unless previously arbitrated in the event of any default in an obligation I owe to you, you may file a civil action against me to collect amounts owed by me to you at any time within three (3) years from the last event of default.

Nothing in this arbitration provision shall be deemed to (1) Permit the arbitration of a controversy or claim (even identical) with another person or permit class-wide arbitration; or (2) limit the applicability of any otherwise applicable waivers contained in this instrument, agreement, or document; or (3) be a waiver by you of the protection afforded to it by otherwise applicable federal or state law; or (4) limit your right (a) to exercise self-help remedies against me such as (but not limited to) setoff; (b) to institute and maintain foreclosure or sale against any personal property collateral, or (c) to petition a court for provisional or ancillary remedies such as (but not limited to) injunctive relief or writ of possession. You may exercise such self-help rights, foreclosure upon such property, or obtain such provisional or ancillary remedies before, during, or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement, or document. Neither this exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

### Guaranty of Third Persons

By signing below and to induce you to grant the requested credit extension to the Debtor(s), I/we unconditionally guarantee the prompt payment when due to you, Branch Banking and Trust Company, and any other holder of the above Note of the entire amount owing on the Note if the Debtor(s) default(s) in payment or performance of any obligations to you. This is a guaranty of payment and not of collection. I/we waive notice of acceptance of this guaranty and agree you don't have to notify me/us if any payments made have not been paid or if the Debtor(s) has (have) otherwise defaulted. You can change the terms of the Note or the schedule of payments or release any security or any Debtor without notifying me or releasing me from responsibility under this guaranty. I agree to be bound by all terms of the Note and agree to pay all amounts owing under the Note, on demand, without requiring you to bring suit or take other action against the Debtor(s) or any collateral for the Contract. In addition, each of the undersigned expressly waives any right to require you to recover against the Debtor(s) or any collateral pursuant to any applicable law, statute or regulation, including the provisions of N.C.G.S. 26-7 et seq. if you sue to enforce this guaranty agreement, I/we agree to pay the reasonable attorneys' fees of the holder of this guaranty equal to 15% of the outstanding balance owing on the Contract.

This guaranty is the joint and several obligation of each of us. Witness the hand(s) and seal(s) of the undersigned. I/We herewith adopt as my/our seal the word (SEAL) appearing above, beside or near my/our signature(s) below:

_____     _____ (SEAL)
         Witness

                                     _____
                                                   (Address)

_____     _____ (SEAL)
         Witness

                                     _____
                                                   (Address)

PDF created with pdfFactory trial version www.pdffactory.com



```
FOR REGISTRATION REGISTER OF DEEDS
        Willie L. Covington
        DURHAM COUNTY, NC
    2009 NOV 02 03:05:33 PM
BK:6355 PG:760-766 FEE:$45.00
INSTRUMENT # 2009038939
```

# NORTH CAROLINA DEED OF TRUST AND SECURITY AGREEMENT

## (Collateral Includes Fixtures)

SATISFACTION. The debt secured by this Deed of Trust, as evidenced by the note or other document secured thereby, has been satisfied in full. This the _____ day of _____, _____

Signed _____

Mail after recording to:
BB+T
100 N. Elliott Rd
Chapel Hill, NC 27514

This instrument was prepared by:
B Myers

Mortgage broker/individual who acted as a mortgage broker (if applicable): _____

Recording: Time, Book and Page

Brief description for index:

THIS DEED OF TRUST AND SECURITY AGREEMENT ("Deed of Trust") is made as of this 7th day of October, 2009 _____, by and among:

GRANTOR (Include Address)

TEDDIANNE SHERMAN and PHILLIP C SHERMAN

TRUSTEE
BB&T Collateral Service Corporation
P.O. Box 1290
Whiteville, NC 28472

BENEFICIARY
BRANCH BANKING AND TRUST COMPANY, a
North Carolina banking corporation
P.O. Box 1290 Whiteville, NC 28472

[ ] IF BOX CHECKED, THIS DEED OF TRUST SECURES AN OBLIGATION INCURRED FOR THE CONSTRUCTION OF AN IMPROVEMENT ON LAND.

THE FOLLOWING INFORMATION APPLIES TO THIS DEED OF TRUST:

1. The maximum principal amount of the Debt (defined below), including present and future advances, secured by this Deed of Trust is SIXTY-SEVEN THOUSAND THREE HUNDRED SIXTY-FOUR DOLLARS & 62/100
($ 67,364.62 _____ ) Dollars.

2. The Debt, on the date hereof, is evidenced by a Note and/or other Document described by name, parties, dollar amount and date as follows:
Note dated _____ October 07 _____, _____ 2009 _____ in the amount of $ 67,364.62
executed by TEDDIANNE SHERMAN and PHILLIP C SHERMAN

(the "Borrower" if not the Grantor), and may be evidenced by and shall be at all times deemed to include, any and all other notes or other Documents now or hereafter evidencing any debt whatsoever incurred by Grantor or Borrower and payable to Beneficiary, the terms of which are incorporated herein by reference.

3. Pursuant to the provisions of Sections 45-67 et seq., of the North Carolina General Statutes, this Deed of Trust secures the payment of the Debt, including present and future advances.



1405NC (0809)    Page 1 of 5

BB&T CONFIDENTIAL

PDF created with pdfFactory trial version www.pdffactory.com

Case 11-80613   Doc 26   Filed 07/22/11   Page 7 of 14

4. The current principal amount of the Debt advanced on the date hereof (including any outstanding amounts advanced previously) by Beneficiary is $ __None_____ (if none, so state).

5. No execution of a written instrument or notation shall be necessary to evidence or secure any future advances made hereunder. The period within which future advances are to be made shall be the fifteen year period beginning on the date of this Deed of Trust.

6. The real property which is the subject of this Deed of Trust is located in or near the City of __HILLSBOROUGH_____, in the Township of _____, in the County of __DURHAM_____, in the State of North Carolina, and the legal description and the chain of title reference of the real property are set forth as follows:

SEE EXHIBIT A

STATEMENT OF PURPOSE: In this Deed of Trust reference shall be made simply to the "Note or other Document", and such a reference is deemed to apply to all of the instruments which evidence or describe the Debt, or which secure its payment, and to all renewals, extensions and modifications thereof, whether heretofore or hereafter executed, and includes without limitation all writings described generally and specifically on the first page of this Deed of Trust in numbered paragraph 2. This Deed of Trust shall secure the performance of all obligations of Grantor and of Borrower to Beneficiary which are described in this Deed of Trust, in the Note or other Document, and such performance includes the payment of the Debt. In this Deed of Trust the definition of "Debt" includes: (i) the principal; (ii) all accrued interest including possible fluctuations of the interest rate if so provided in the Note or other Document; (iii) all renewals or extensions of any obligation under the Note or other Document (even if such renewals or extensions are evidenced by new notes or other documents); and (iv) all other obligations of Grantor to Beneficiary which are described in this Deed of Trust, or in the Note or other Document. (for example, payment of the attorneys fees of the Beneficiary, insurance premiums and ad valorem taxes).

NOW, THEREFORE, for the purposes and under the conditions described in this Deed of Trust and in consideration of the Debt and the mutual promises of Grantor and Beneficiary, Grantor hereby conveys to Trustee, in trust, with power of sale, the real property described in this Deed of Trust, together with any improvements, equipment and fixtures existing or hereafter placed on or attached to this real property, all proceeds thereof and all other appurtenant rights and privileges. The term "the Property" shall include this real property, any such improvements, fixtures, and also all appurtenant rights and privileges.

TO HAVE AND TO HOLD the Property, to Trustee, its successors and assigns, but upon the trust, and under the terms and conditions of this Deed of Trust, to which Grantor, Trustee and Beneficiary hereby agree:

1. PERFORMANCE BY GRANTOR. Grantor shall fulfill all of Grantor's obligations as specified in this Deed of Trust, the Note or other Document.

2. TAXES, DEEDS OF TRUST, OTHER ENCUMBRANCES. Grantor shall make timely payment of all ad valorem taxes, assessments or other charges or encumbrances which may constitute a lien upon the Property. Grantor shall timely pay and perform any obligation, covenant or warranty contained in any other deed of trust or writing (herein Other Deed of Trust) which gives rise to any or which may constitute a lien upon any of the Property. Grantor shall upon request of Beneficiary promptly furnish satisfactory evidence of such payment or performance. Grantor shall not enter into, terminate, cancel or amend any lease affecting the Property or any part thereof without the prior written consent of Beneficiary. Grantor shall timely pay and perform all terms of any lease or sublease of the Property or any part thereof.

3. INSURANCE. Grantor shall continuously maintain insurance on all improvements which are now existing and which might hereafter become part of the Property against loss by fire, flood and other hazards, casualties and contingencies in such amounts and for such periods as may be required from time to time by Beneficiary, and shall pay promptly, when due, any premiums on the insurance. If it is determined at any time that any of the Property is located in a flood hazard area as defined in the Flood Disaster Protection Act 1973, Grantor shall obtain and maintain flood insurance on Property at Grantor's expense for as long as this Deed of Trust is in effect. Flood insurance coverage shall be in an amount equal to the lesser of (i) the maximum amount secured as set forth herein or (ii) the maximum limit of coverage made available for the particular type of property under the law. If Grantor shall fail to procure or maintain hazard or flood insurance coverage in the specified amount for the Property within a reasonable time of receiving notice from Beneficiary of either the requirement or of the lapse of an existing policy, Beneficiary may, but is not obligated to, expend for the account of Grantor any sums which may be necessary to purchase the required hazard or flood insurance, which shall be fully secured by this Deed of Trust and which shall accrue interest from the time expended until paid at the rate set forth in the Note or other Document. All insurance shall be carried with companies approved by Beneficiary and shall contain a loss payable clause (New York long form) in favor of and in a form acceptable to Beneficiary. Grantor shall cause all policies and renewals thereof to be delivered to Beneficiary. In the event of loss, Grantor shall give immediate written notice to Beneficiary, and Beneficiary may make proof of loss if such is not made promptly by Grantor. Each insurer is hereby expressly authorized and directed by Grantor to make payment for the loss directly and solely to Beneficiary. Beneficiary may apply the insurance proceeds, or any part thereof, in its sole discretion and at its option, either to the reduction of Debt or to the restoration or repair of any portion of the Property damaged, but Beneficiary shall not be obligated to see to the proper application of any amount paid over to Grantor.

BB&T CONFIDENTIAL

PDF created with pdfFactory trial version www.pdffactory.com

Case 11-80613    Doc 26    Filed 07/22/11    Page 8 of 14

4. ESCROW DEPOSITS. Upon demand of Beneficiary, Grantor shall add to each payment required under the Note or other Document the amount estimated by Beneficiary to be sufficient to enable Beneficiary to pay as they become due all taxes, charges, assessments, and insurance premiums which Grantor is required to pay. Further, any deficiency occasioned by an insufficiency of such additional payments shall be deposited by Grantor with Beneficiary upon demand.

5. PRESERVATION AND MAINTENANCE OF THE PROPERTY. Grantor shall keep the Property in as good order and repair as it now is (reasonable wear and tear excepted) and shall neither commit nor permit any waste or any other occurrence or use which might impair the value of the Property. Grantor shall not initiate or acquiesce in a change in the zoning classification of the Property or make or permit any structural alteration thereof without Beneficiary's prior written consent.

6. COMPLIANCE WITH LAWS. Grantor shall regularly and promptly comply with any applicable legal requirements of the United States, the State of North Carolina or other governmental entity, agency or instrumentality relating to the use or condition of the Property.

7. CONDEMNATION AWARD. Any award for the taking of, or damages to, all or any part of the Property or any interest therein upon the lawful exercise of the power of eminent domain shall be payable solely to Beneficiary, which may apply the sums so received to payment of the Debt.

8. PAYMENTS BY BENEFICIARY. If Grantor or Borrower shall be in default in the timely payment or performance of any of Grantor's or Borrower's obligations, the Note or other Document, under this Deed of Trust or Other Deed of Trust, Beneficiary may, but it is not obligated to, expend for the account of Grantor any sums, expenses and fees which Beneficiary believes appropriate for the protection of the Property and the maintenance and execution of this trust. Any amounts so expended shall be deemed principal advances fully secured by this Deed of Trust, shall bear interest from the time expended until paid at the rate of interest accruing on the Note or other Document, and shall be due and payable on demand.

9. RENTS AND PROFITS. Grantor hereby assigns to Beneficiary all future rents and profits from the Property as additional security for the payment of the Debt and for the performance of all obligations secured by this Deed of Trust. Grantor hereby appoints Beneficiary as Grantor's attorney-in-fact to collect any rents and profits, with or without suit, and to apply the same, less expenses of collection, to the Debt or to any obligations secured by this Deed of Trust in any manner as Beneficiary may desire. However, until default under the Note or other Document or under this Deed of Trust, Grantor may continue to collect and retain the rents and profits without any accountability to Beneficiary. Beneficiary's election to pursue the collection of the rents or profits shall be in addition to all other remedies which Beneficiary might have and may be put into effect independently of or concurrently with any other remedy.

10. SECURITY INTEREST. All the fixtures and equipment which comprise a part of the Property shall, as far as permitted by law, be deemed to be affixed to the aforesaid land and conveyed therewith. As to the balance of the fixtures, this Deed of Trust shall be considered to be a security agreement which creates a security interest in such fixtures for the benefit of Beneficiary. In that regard, Grantor grants to Beneficiary all of the rights and remedies of a secured party under the North Carolina Uniform Commercial Code. Grantor agrees to execute and deliver to Beneficiary, concurrently with the execution of this Deed of Trust and upon the request of Beneficiary from time to time hereafter, all financing statements and other documents reasonably required to perfect and maintain the security interest created hereby. Grantor hereby irrevocably (as long as the Debt remains unpaid) makes, constitutes and appoints Beneficiary as the true and lawful attorney of Borrower to sign the name of Grantor on any financing statement, continuation of financing statement or similar document required to perfect or continue such security interests. However to the extent allowed by law, this Deed of Trust shall be a financing statement sufficient to perfect and maintain any security interest created hereby in the Property and its Proceeds.

11. GRANTOR'S CONTINUING OBLIGATION. This Deed of Trust shall remain as security for full payment of the Debt and for performance of any obligation evidenced by the Note or other Document, notwithstanding any of the following: (a) the sale or release of all or any part of the Property; (b) the assumption by another party of Grantor's obligations under this Deed of Trust, the Note or other Document; (c) the forbearance or extension of time for payment of the Debt or for performance of any obligations under this Deed of Trust, the Note or other Document, whether granted to Grantor or to a subsequent owner of the Property; or (d) the release of any party who has assumed payment of the Debt or who assumed any other obligations under this Deed of Trust, the Note or other Document. None of the foregoing shall, in any way, affect the full force and effect of the lien of this Deed of Trust or impair Beneficiary's right to a deficiency judgment in the event of foreclosure against Grantor or any party who had assumed payment of the Debt or who assumed any other obligations the performance of which is secured by this Deed of Trust.

12. SUBSTITUTION OF TRUSTEE. Beneficiary shall have the unqualified right to remove the individual designated as Trustee on the first page of this Deed of Trust, and to appoint one or more substitute or successor Trustees by instruments filed for registration in the County Registry where this Deed of Trust is recorded. Any such removal or appointment may be made at any time and from time to time without notice, without specifying any reason therefor and without any court approval. Any such appointee shall become fully vested with title to the Property and with all rights, powers and duties conferred upon the individual originally designated as Trustee, in the same manner and to the same effect as though that party were named herein as the original Trustee.

13. INDEMNIFICATION IN EVENT OF ADVERSE CLAIMS. In the event that Beneficiary or Trustee voluntarily or otherwise shall become parties to any suit or legal proceeding involving the Property, they shall be saved harmless and shall be reimbursed by Grantor for any amounts paid, including all costs, charges and attorney's fees incurred in any such suit or proceeding, and the same shall be secured by this Deed of Trust and payable upon demand.

14. INSPECTION. Beneficiary may at any reasonable time and from time to time make or cause to be made reasonable entries upon, investigations, and inspections of the Property, including without limitation any inspections or investigations such as sampling and testing which may be necessary or desirable to review compliance with Environmental Laws.

15. WARRANTIES. Grantor covenants with Trustee and Beneficiary that Grantor is seized of the Property in fee simple, has the right to convey the same in fee simple, that title to the Property is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever, subject only to any declarations, easements, restrictions or encumbrances listed in the title opinion or title insurance policy which Beneficiary obtained in the transaction in which Beneficiary obtained this Deed of Trust.

16. ATTORNEYS' FEES. In the event that Grantor or Borrower shall default in its obligations under this Deed of Trust, the Note or other Document, and Beneficiary employs an attorney to assist in the collection of the Debt or to enforce compliance of Grantor with any of the provisions of this Deed of Trust, the Note or other Documents or in the event Beneficiary or Trustee shall become parties to any suit or legal proceeding (including any proceeding conducted before any United States Bankruptcy Court) concerning the Property, concerning the lien of this Deed of Trust, concerning collection of the Debt or concerning compliance by Grantor with any of the provisions of this Deed of Trust, the Note or other Document, Grantor shall pay Beneficiary's reasonable attorneys' fees and all of the costs that may be incurred, and such fees and costs shall be secured by this Deed of Trust and its payment enforced as if it were a part of the Debt. Grantor shall be liable for such attorneys' fees and costs whether or not any suit or proceeding is commenced.

17. ANTI-MARSHALLING PROVISIONS. Trustee and Beneficiary may grant releases at any time and from time to time of all or any portion of the Property (whether or not such releases are required by agreement among the parties) agreeable to Trustee and Beneficiary without notice to or the consent, approval or agreement of other parties and interests, including junior lienors and purchasers subject to the lien of this Deed of Trust, and such releases shall not impair in any manner the validity of or priority of this Deed of Trust on that portion of the Property remaining subject to this Deed of Trust, nor release Grantor from personal liability for the Debt. Notwithstanding the existence of any other security interests in the Property held by Beneficiary or by any other party, Beneficiary shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies available to Beneficiary, and Beneficiary shall further have the right to determine the order in which any or all portions of the Debt are satisfied from the proceeds realized upon the exercise of any remedy it has. Grantor, or any party who consents to this, or any party who has actual or constructive notice hereof, hereby waives any and all rights to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

1405NC (0809)          Page 3 of 5

BB&T CONFIDENTIAL

PDF created with pdfFactory trial version www.pdffactory.com

Case 11-80613   Doc 26   Filed 07/22/11   Page 9 of 14

18. ENVIRONMENTAL ISSUES. Grantor for itself, its successors and assigns represents, warrants and agrees that (a) neither Grantor nor any other person has used or installed any Hazardous Material (as hereinafter defined) on the Property or received any notice from any governmental agency, entity or other person with regard to Hazardous Materials on, from or affecting the Property; (b) neither Grantor or any other person has violated any applicable Environmental Laws (as hereinafter defined) relating to or affecting the Property; (c) the Property are presently in compliance with all Environmental Laws; there are no circumstances presently existing upon or under the Property, or relating to the Property which may violate any applicable Environmental Laws, and there is not now pending, or threatened, any action, suit, investigation or proceeding against Grantor relating to the Property (or against any other party relating to the Property) seeking to enforce any right or remedy under any of the Environmental Laws; (d) the Property shall be kept free of Hazardous Materials, and shall not be used to generate, manufacture, transport, treat, store, handle, dispose, or process Hazardous Materials; (e) Grantor shall not cause nor permit the installation of Hazardous Materials in the Property nor a release of Hazardous Materials on the Property; (f) Grantor shall at all times comply with and ensure compliance by all other parties with all applicable Environmental Laws relating to or affecting the Property and shall keep the Property free and clear of any liens imposed pursuant to any applicable Environmental Laws; (g) the Grantor has obtained and will at all times continue to obtain and/or maintain all licenses, permits, and/or other governmental or regulatory actions necessary to comply with Environmental Laws (the "Permits") and the Grantor is in full compliance with the terms and provisions of the Permits and will continue to comply with the terms and provisions of the Permits; (h) Grantor shall immediately give the Beneficiary oral and written notice in the event that Grantor receives any notice from any governmental agency, entity, or any other party with regard to Hazardous Materials on, from or affecting the Property and shall conduct and complete all investigations, sampling, and testing, and all remedial, removal, and other actions necessary to clean up and remove all Hazardous Materials on, from or affecting the Property in accordance with all applicable Environmental Laws. The Grantor hereby agrees to indemnify the Beneficiary and hold the Beneficiary harmless from and against any and all losses, liabilities, damages, injuries (including, without limitation, attorneys' fees) and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against Beneficiary for, with respect to, or as a direct or indirect result of (a) the presence on, or under, or the escape, spillage, emission or release from the Property of any Hazardous Material regardless of whether or not caused by or within the control of Grantor, (b) the violation of any Environmental Laws relating to or affecting the Property, whether or not caused by or within the control of Grantor, (c) the failure by Grantor to comply fully with the terms and provisions of this paragraph, or (d) any warranty or representation made by Grantor in this paragraph being false or untrue in any material respect. For purposes of this Deed of Trust, "Hazardous Material" means and includes petroleum products, any flammable explosives, radioactive materials, asbestos or any material containing asbestos, and/or any hazardous, toxic or dangerous waste, substance or material defined as such in (or for the purpose of) the Environmental Laws. For the purposes of this Deed of Trust, "Environmental Laws" means the Comprehensive Environmental Response, Compensation and Liability Act, the Hazardous Materials Transportation Act, the Resource Conservation and Recovery Act, any "Super Fund" or "Super Lien" law, or any other federal, state, or local law, regulation or decree regulating, relating to or imposing liability or standards of conduct concerning any petroleum products, any flammable explosives, radioactive materials, asbestos or any material containing asbestos, and/or hazardous, toxic or dangerous waste, substance or material, as may now or at any time hereafter be in effect. The obligations and liabilities of Grantor under this paragraph shall survive the foreclosure of the Deed of Trust, the delivery of a deed in lieu of foreclosure, the cancellation of the Note; or if otherwise expressly permitted in writing by the Bank, the sale or alienation of any part of the Property.

19. EVENTS OF DEFAULT. Grantor shall be in default under this Deed of Trust upon the occurrence of any of the following:

(a) Default in the payment or performance of any of the obligations, or of any covenant or warranty, in this Deed of Trust, in the Note or other Document, or in any other note of Grantor or Borrower to Beneficiary or any contract between Grantor and Beneficiary; or in any contract between any third party and Beneficiary made for the benefit of Grantor; or

(b) Any warranty, representation or statement made or furnished to Beneficiary by or on behalf of Grantor or Borrower in connection with this transaction proving to have been false in any material respect when made or furnished; or

(c) Loss, theft, substantial damage, destruction to or of the Property, or the assertion or making of any levy, seizure, mechanic's or materialman's lien or attachment thereof or thereon; or

(d) Death, dissolution, termination of existence, insolvency, business failure, appointment of a Receiver for any part of the property of, assignment for the benefit of creditors by, or the inability to pay debts in the ordinary course of business of the Grantor or Borrower or any co-maker, endorser, guarantor or surety for Grantor; or

(e) Failure of a corporate Grantor, Borrower or co-maker, endorser, guarantor or surety for Grantor to maintain its corporate existence in good standing; or

(f) Upon the entry of any monetary judgment or the assessment of filing of any tax lien against Grantor or Borrower; or upon the issuance of any writ of garnishment or attachment against any property of debts due or rights of Grantor or Borrower; or

(g) The sale (including sale by land contract upon delivery of possession), transfer or encumbrance of all or any part of the Property or any interest therein, or any change in the ownership or control of any corporate or partnership Grantor or Borrower, without Beneficiary's prior written consent; or

(h) If Beneficiary should otherwise deem itself, its security interests, the Property or the Debt unsafe or insecure; or should Beneficiary otherwise believe that the prospect of payment or other performance is impaired.

20. REMEDIES OF BENEFICIARY UPON DEFAULT. Upon the occurrence of any event of default, Beneficiary may, at its option, without prior notice to Grantor, declare the Debt to be immediately due and payable in full; and, on application of Beneficiary, Trustee shall foreclose this Deed of Trust in any manner permitted by North Carolina law, including selling the Property or any part thereof at public sale to the last and highest bidder for cash, free of any equity of redemption, homestead, dower, curtesy or other state or federal exemption, all of which are expressly waived by Grantor, after compliance with applicable North Carolina laws relating to foreclosure sales under power of sale; and Trustee shall execute and deliver to the purchaser a Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. The proceeds of any such sale shall be applied in the manner and in the order prescribed by applicable North Carolina law, it being agreed that the expenses of any such sale shall include a commission of five per cent of the gross sales price to Trustee for holding such sale and for all services performed by him hereunder excluding expenses incurred in making sale. In the event a foreclosure suit or special proceeding is commenced, and no sale is held, then the Grantor shall pay to the Trustee: 1) all expenses incurred by Trustee and 2) a partial commission computed on five per cent of the balance of the unpaid Debt. Beneficiary may bid and become the purchaser at any sale under this Deed of Trust. At any such sale Trustee may at his election require the successful bidder immediately to deposit with Trustee cash in an amount equal to all or any part of the successful bid, and notice of any such requirement need not be included in the advertisement of the notice of such sale. If foreclosure proceedings are instituted under this Deed of Trust, Trustee is hereby authorized to take possession of the Property and collect any rental, accrued or to accrue; or Trustee may lease the Property or any part thereof, receive the rents and profits therefrom, and hold the proceeds remaining after payment of the expenses of managing and operating the Property subject to the order of the court for the benefit of Beneficiary, pending final disposition of the foreclosure proceedings, and during any period allowed by applicable law for the redemption from any foreclosure sale ordered in such proceedings; and Trustee may act irrespective of the value of the Property or its adequacy or inadequacy to secure or discharge the indebtedness then owing.

21. RELEASE AND CANCELLATION. Upon fulfillment of all of obligations, the performance of which is secured by this Deed of Trust, and upon payment of the Debt, this Deed of Trust and the Note or other Document shall be marked "Satisfied" and returned to Grantor, and this conveyance shall be null and void and may be cancelled of record at the request and cost of Grantor, and title to the Property shall revest as provided by law.

22. MISCELLANEOUS. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and shall not be used to interpret or define any provisions. All remedies provided herein are distinct and cumulative to any other right or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively. All covenants contained herein shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors or assigns, of the parties to this Deed of Trust, and the designations "Grantor", "Trustee" and "Beneficiary", include the parties, their heirs, executors, administrators, successors and assigns. The designations "Corporate", "Corporation", and "Partnership" include limited liability companies and limited liability partnerships. Whenever used, the singular number shall include the plural, and the plural the singular, and the use of any gender shall be applicable to all genders. This Deed of Trust shall be governed by and construed under North Carolina law. Any forbearance by Beneficiary in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Beneficiary shall not be a waiver of Beneficiary's right to accelerate the maturity of the Debt. Time is of the essence in the payment or performance of any of the obligations, or of any covenant or warranty contained in this Deed of Trust or in the Note, or other Document.

1405NC (0809) Page 4 of 5

BB&T CONFIDENTIAL

PDF created with pdfFactory trial version www.pdffactory.com

Case 11-80613   Doc 26   Filed 07/22/11   Page 10 of 14

IN TESTIMONY WHEREOF, each individual Grantor has hereunto set his hand and adopted as his seal the word "SEAL" appearing beside or near his signature, this sealed instrument being executed and delivered on the date first above written.

Grantor: _____ (SEAL)
TEDDIANNE SHERMAN

Grantor: _____ (SEAL)
PHILLIP C SHERMAN

Grantor: _____ (SEAL)

Grantor: _____ (SEAL)

For Individual

STATE OF NORTH CAROLINA, COUNTY OF __Orange__

I, __Barbara Belk Myers__, a Notary Public, do hereby certify that __Teddianne Sherman__, an individual, Grantor, personally appeared before me this day and acknowledged that (s)he voluntarily signed this Deed of Trust for the purposes stated therein.

Witness my hand and official stamp or notarial seal, this __7__ day of __October__, 20__09__

[SEAL]

__Barbara Belk Myers__ (SEAL)
Notary Public
My Commission Expires: __1-14-2010__

For Individual

STATE OF NORTH CAROLINA, COUNTY OF __Orange__

I, __Barbara Belk Myers__, a Notary Public, do hereby certify that __Phillip C Sherman__, an individual, Grantor, personally appeared before me this day and acknowledged that (s)he voluntarily signed this Deed of Trust for the purposes stated therein.

Witness my hand and official stamp or notarial seal, this __7__ day of __October__, 20__09__

[SEAL]

__Barbara Belk Myers__ (SEAL)
Notary Public
My Commission Expires: __1-14-2010__

The foregoing or annexed certificate(s) of _____, Notary(ies) Public, has(have) been verified to have the signature, commission expiration date, and official seal, if required. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_____ REGISTER OF DEEDS FOR _____ COUNTY

By _____ Deputy/Assistant - Register of Deeds.

BB&T CONFIDENTIAL

PDF created with pdfFactory trial version www.pdffactory.com

Case 11-80613   Doc 26   Filed 07/22/11   Page 11 of 14

Exhibit A – **Sherman**

**BEING all of Lot 15 of Hardscrabble Plantation, Phase IV, as shown on Plat Book 131, Page 140, Durham County Registry. Parcel ID: 187360**

BB&T CONFIDENTIAL

PDF created with pdfFactory trial version www.pdffactory.com

PDF created with pdfFactory trial version www.pdffactory.com



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

## PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording and/or cancellation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **Filed For Registration:** | 11/02/2009 03:05:33 PM |
| **Book:** | RE   6355   Page: 760-766 |
| **Document No.:** | 2009038939 |
| | D-T-AGMT   7 PGS   $45.00 |
| **Recorder:** | JENNIFER H SMITH |



2009038939

BB&T CONFIDENTIAL

(Page 1 of 7)

## CERTIFICATE OF SERVICE

I, James S. Livermon, III, of Poyner Spruill LLP, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, I served a copy of the foregoing Objection to Confirmation on:

> Phillip Charles Sherman
> Teddianne Marie Sherman
> 1423 Raeford Road
> Fayetteville, NC 28305
>
> John T. Orcutt, Esq.
> Attorney for Debtor
> *(Via CM/ECF)*
>
> Richard M. Stearns, Esq.
> Chapter 13 Trustee
> *(Via CM/ECF)*
>
> Michael D. West, Esq.
> Bankruptcy Administrator
> *(Via CM/ECF)*

by depositing the same in the United States mail, first class, postage prepaid.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 22, 2011

> POYNER SPRUILL LLP
>
> By: s/ James S. Livermon, III
> NC State Bar Number 26492
> Attorneys for Branch Banking and Trust Company
> Post Office Box 353
> Rocky Mount, North Carolina 27802-0353
> Telephone: (252) 446-2341
> Fax: (252) 972-7051